[Cite as *In re J.C.*, 2023-Ohio-4135.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.C.

Court of Appeals No. L-23-1143
L-23-1144

Trial Court No. JC 22289503
JC 22291836

**DECISION AND JUDGMENT**

Decided: November 16, 2023

* * * * *

Anthony R. McGeorge, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, J.**

## I.       Introduction

{¶ 1} In this consolidated appeal, appellant, K.B. ("Mother"), appeals the May 31,

2023 judgment of the Lucas County Court of Common Pleas, Juvenile Division, that

terminated her parental rights to her child, J.C. and denied H.C.'s ("Grandmother's"),

request for an award of legal custody of J.C. For the reasons described herein, we find

that Mother lacks standing to pursue an appeal on behalf of Grandmother and we dismiss the appeal.

**A.     Facts and Procedural Background**

{¶ 2} On June 2, 2022, Lucas County Children Services ("LCCS") filed its "Complaint in Dependency and Neglect" seeking permanent custody of J.C. and a finding that Mother's parental rights be permanently terminated.[1]  As part of its investigation, LCCS identified Grandmother as a potential relative to whom legal custody of J.C. could be awarded.  Grandmother lives in Florida and LCCS, through the procedures outlined in R.C. 5103.23—Ohio's statute adopting the Interstate Compact for the Placement of Children ("ICPC"), sent a request to the state of Florida asking it conduct a home visit to determine whether her residence was a suitable environment for J.C.  On September 12, 2022, the state of Florida denied J.C.'s placement with Grandmother based on Grandmother's 1998 interaction with LCCS in which her child was determined to be neglected and Grandmother agreed to grant permanent custody of her child to her mother.

{¶ 3} After being advised of Florida's decision, Grandmother filed a third-party complaint seeking legal custody of J.C. on November 30, 2022.  At the conclusion of its investigation, LCCS filed a motion for permanent custody of J.C. on February 3, 2023.  Both LCCS's motion and Grandmother's third-party complaint proceeded to a disposition

---

[1] J.C.'s father took part in the proceedings below but did not appeal from the trial court's judgment and is not a party to this appeal.

2.

hearing on May 12, 2023. Mother did not attend the hearing due to her incarceration following her January 11, 2023 conviction on felony offenses in the United States District Court for the Northern District of Ohio.

{¶ 4} At the hearing, LCCS's case worker and J.C.'s guardian ad litem both testified that the granting of LCCS's motion for permanent custody, which would ultimately lead to his adoption by his foster parents, was in J.C.'s best interest. Grandmother testified that she believed the 1998 case with LCCS, in which her parental rights to her child were ultimately terminated, should not impact the court's decision on whether she should be granted legal custody of J.C. because she has matured over the previous 25 years and could provide J.C. with an appropriate home life.

{¶ 5} At the conclusion of the hearing, the trial court orally granted LCCS's motion for permanent custody and denied Grandmother's third-party complaint for legal custody. The trial court's judgment was memorialized in a written decision on May 31, 2023. In that entry, the trial court held that granting LCCS's motion was in J.C.'s best interest in light of his foster parents' ability to satisfy J.C.'s basic needs and because J.C. was bonding with both his foster parents and his siblings that were also in their care. The trial court also found that granting legal custody to Grandmother was not in J.C.'s best interest because of Grandmother's "de minimis" attempts to be part of J.C.'s life and, in part, on the results of Florida's home visit determination under the ICPC.

3.

**{¶ 6}** Mother filed a notice of appeal on June 13, 2023. Her notice of appeal referenced both the case number assigned to LCCS's motion for permanent custody and the case number assigned to Grandmother's third-party complaint for custody. As a result, the notice generated two appellate cases, designated as L-23-0043 and L-23-0044, respectively, despite the fact that Grandmother did not appeal the trial court's judgment denying her request for legal custody. We consolidated the appeals on June 23, 2023.

### B. Assignments of Error

**{¶ 7}** Mother assigns the following error for our review:

1. Ohio Administrative Code directly conflicts with the Revised Code, and is therefore invalid, thus the trial court erred in not considering paternal grandparents for placement of J.C.

### II. Analysis

**{¶ 8}** In her single assignment of error, Mother argues that the trial court erred in failing to grant Grandmother's request for legal custody of J.C. because the trial court relied solely on LCCS's review of the state of Florida's conclusions under the ICPC to determine that Grandmother's residence was not a suitable environment for J.C. Further, she argues that Ohio Adm. Code Section 5101:2-52-04(A)(4), which allows for LCCS to review the state of Florida's conclusion as to whether placement with Grandmother offered J.C. a suitable environment rather than conducting its own investigation, conflicts with R.C. 2151.414(D)(1)(d), which requires the trial court to consider whether J.C.'s

4.

need for secure placement can be "achieved without a grant of permanent custody" to LCCS. Essentially, Mother argues that the regulation allowing consideration of Florida's home visit was invalid due to a purported direct conflict with the statute's inherent preference for J.C.'s placement in a suitable environment *without* granting a motion for permanent custody. By relying on LCCS's review of the state of Florida's conclusions, she argues, the trial court erred in finding Grandmother was not a proper placement and denying her request for legal custody of J.C.

{¶ 9} Initially, we note that the record belies Mother's primary argument that the trial court only relied on the state of Florida's conclusion in denying Grandmother's request for custody. The trial court's announcement of its decision and its judgment entry both identified multiple factors on which it based its denial of Grandmother's request. However, we cannot reach the merits of Mother's argument as to the trial court's alleged error because she lacks standing to pursue this appeal on behalf of Grandmother.

{¶ 10} The trial court's judgment resolved two separate issues—whether LCCS should be granted permanent custody of J.C. and whether Grandmother should be granted legal custody of J.C. "Permanent custody" is "a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations * * * and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations." *In re. C.R.,* 108

5.

Ohio St.3d 369, 2006-Ohio-119, 843 N.E.2d 1188, ¶ 14. "Legal custody" is "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." *Id.* at ¶ 15. "The important distinction is that an award of legal custody of a child does not divest parents of their residual parental rights, privileges, and responsibilities." *Id.* at ¶ 17. It is the distinction between these two separate concepts— that is, whether appellant challenges the termination of her rights or the denial of Grandmother's requests for legal custody—that guides our finding that Mother lacks standing to pursue this appeal.

{¶ 11} In *In re. S.P., A.B., X.B.,* 6th Dist. Lucas No. L-20-1127, 2021-Ohio-25, we stated:

A parent has standing to challenge the trial court's failure to grant a motion for legal custody filed by a non-parent because the court's denial of that motion led to a grant of permanent custody to the children services agency, which impacted the residual rights of the parent. * * * *The parent has standing to challenge only how the court's decision impacted the parent's rights, however, not the rights of the third party.* * * * In other words, Mother has no standing to assert that the court abused its discretion by

6.

failing to grant [a non-parent] legal custody of [the child]. Her challenge is limited to whether the court's decision to terminate her parental rights was proper.

*Id.* at ¶ 38, citing *In re. A.B.,* 6th Dist. Lucas Nos. L-12-1069, L-12-1081, 2012-Ohio-4632, ¶ 28-29 (emphasis added). Thus, a parent whose parental rights are terminated through the granting of permanent custody to a children services agency may only challenge the court's decision to terminate their parental rights and may not appeal the impact of that decision on a third-party's rights. *In re. A.B.* at ¶ 30 (holding that appellant lacked standing to challenge the trial court's denial of a third-party's request for legal custody when appellant made no argument that it resulted in the erroneous termination of their parental rights).

{¶ 12} Applying this holding here, Mother would lack standing to appeal the trial court's denial of Grandmother's request for legal custody unless her argument is that the denial of Grandmother's request erroneously resulted in the termination of her parental rights. Even the most favorable reading of Mother's brief shows that she makes no such argument.

{¶ 13} Beginning with her assigned error, Mother only argues that "the trial court erred in not considering paternal grandparents for placement of J.C." Her argument in support of that error focus only on the trial court's reliance on Florida's home study under the ICPC to deny Grandmother's legal custody of J.C. She does not allege that the

7.

failure to grant legal custody of J.C. to Grandmother led to the trial court's erroneous granting of permanent custody of J.C. to LCCS. Lastly, in her conclusion, Mother states that she "respectfully requests this Court reverse the trial court's granting of permanent custody and *remand for further proceedings on [Grandmother's] motion for legal custody.*" (emphasis added). Notably, she does not request further proceedings to reconsider the termination of her parental rights. Put simply, at no point in her brief does Mother argue that the termination of *her parental rights* constituted error. As a result, Mother lacks standing to pursue the error she assigned to the trial court's denial of Grandmother's request for legal custody of J.C. *See In. re. A.B.* at ¶ 30.

{¶ 14} "The issue of standing is jurisdictional and may be raised by the court sua sponte." *State v. Langston,* 6th Dist. Lucas No. L-12-1014, 2012-Ohio-6249, ¶ 7. Indeed, "an appeal lies only on behalf of an aggrieved party who must demonstrate that [they have] a present interest in the litigation and [are] prejudiced by the judgment appealed from." *Id.* at ¶ 8. "Moreover, it is axiomatic, as a prudential standing limitation, that a party is limited to asserting his or her own legal rights and interests, and not those of a third party." *Id.* Mother makes no argument that the trial court's denial of Grandmother's request for legal custody led to the termination of her parental rights. She merely seeks review of the trial court's decision to deny Grandmother's request for legal custody of J.C., a decision that Grandmother did not appeal. Consequently, Mother has

8.

no present interest in this appeal and lacks standing to seek our review of the trial court's decision, warranting dismissal of the appeal. *Id.* at ¶ 16.

### III. Conclusion

{¶ 15} For the foregoing reasons, we find that Mother lacks standing to seek review of the trial court's denial of Grandmother's request for legal custody of J.C. and we dismiss her appeal.

{¶ 16} Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Appeal dismissed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.